UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**PATRICK L. KINGSLEY, SR.**　　　　　　　**CIVIL ACTION NO. 24-0694**

**SECTION P**

**VS.**

**JUDGE TERRY A. DOUGHTY**

**WARDEN NOLEN BASS, ET AL.**　　　　　**MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Plaintiff Patrick L. Kingsley, Sr., a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately May 22, 2024, under 42 U.S.C. § 1983. He names Warden Nolen Bass and Assistant Warden A. Johnson as defendants.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that he had to defecate in a clear bag when the water supply to TPDC was intermittently "shut off for hours and sometimes days at a time"—which deprived him of dignity and decency and caused him to "feel very violated"—on the following dates and date ranges: from September 15-28, 2023, at the end of January 2024, February 26, 2024, February 29, 2024, March 6, 2024, March 28, 2024, July 7, 2024, and July 11, 2024.[2] [doc. #s 1, p. 3; 12, pp. 2-4, 9, 10]. He had to place his bags of excrement in a larger trash bag containing approximately 60 other inmates' excrement, which was located in a shower and which remained there for 2-3 days

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] Plaintiff mentions that the "water supply was shut off to the citizens of Tensas Parish" as well. [doc. # 12, p. 2].

1

before it was removed. [doc. #s 1, p. 3; 12, p. 3]. He alleges that he was "exposed to biohazardous waste and is now unable to bond socially and mentally." [doc. # 12, p. 3]. Plaintiff states that he was embarrassed, suffered emotional distress, and he felt dehumanized and "very sick." [doc. #s 1, pp. 3-4, 11; 12, p. 3;]. He also suggests that he suffered from dysentery. [doc. # 12, p. 8].

Plaintiff claims that there was a "continual presence of filth and odors from the feces." [doc. # 12, p. 6]. He states that toilets were full of feces. *Id.* at 7.

Plaintiff claims that he was unable to wash his hands after defecating in bags. [doc. # 12, pp. 4, 5]. He also states that he was unable to shower and brush his teeth. *Id.* Because he could not bathe, he suffered skin irritation and redness. *Id.* at 9.

When the water was off, Plaintiff and other prisoners had to urinate in a shower. [doc. # 12, p. 2].

Plaintiff claims that when inmate workers removed the larger bags of feces, the bags were "burned in massive piles beside the maintenance shop" instead of taken to a dumpster. [doc. # 12, p. 6]. He adds that the workers "sometimes" spilled waste on the floor when they removed the bags. *Id.* at 7-8.

Plaintiff claims that TPDC is extremely rusty in most areas. [doc. # 12, p. 6]. He claims that pipes at the facility are old and in need of repair. *Id.* at 6-7. He claims that there are food particles in the dormitory because there is no trash can. *Id.* at 7. He claims that there are no safety rails or shower mats. *Id.* He claims that paint is peeling. *Id.* at 8. And he claims that he was not allowed "go outside during shutoffs." *Id.* at 10.

Plaintiff claims that he was deprived of water for two weeks. [doc. # 1, p. 3]. In an amended pleading, he states that he was given one 16-ounce bottle of water after each meal.

[doc. # 12, p. 2]. He later writes, "There has been 13 days of extreme dehydration." *Id.* at 5. He adds that he lacked adequate water for showering, cooking, cleaning, and brushing his teeth. *Id.* at 9.

For relief, Plaintiff seeks: (1) $500,000.00; (2) new urinals in dormitories; (3) the repair of the damaged sewer system; (4) the repair of the rusty ventilation system; (5) medical care; (6) the removal of the pile of feces; (7) the repair of water fountains; (8) the repair of shower floors; (9) safety railings and shower mats; (10) to enjoin the burning of feces; (11) cleaning supplies; (12) new paint for the dormitory; (13) the removal of large rusted plates; and (14) name tags for staff to wear. [doc. #s 1, p. 4; 12, pp. 12-13].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc*., 614

4

F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was

5

deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[4] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[5] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff fails to plausibly allege that either defendant was deliberately indifferent. As to defendants' involvement or knowledge, he offers only the following, interspersed irregularly throughout his amended pleading:

---

[4] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[5] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

     ○ "Plaintiff and other offenders could not communicate respectively with the warden or some staff members at T.P.D.C."

     ○ "Plaintiff . . . was never given any opportunity to clean behind themselves or the ability to be properly hydrated, due to Warden Bass and his staff members, who seek rehabilitation through its correctional system. [sic]."

     ○ "Plaintiff feels like he was dehumanized by being forced to defecate in clear non-biohazardous bags by the Warden of T.P.D.C. and staff members."

     ○ "Warden Bass has illustrated very poor and unethical behavior in terms of maintaining exceptional living conditions, so the courts are getting involved. [sic]."

     ○ "The deputy warden and inmate workers come in the dorms fighting with toilets that are packed with urine feces and toilet paper . . . when flushed runs over or spills in bathroom area which is not avoided. They then go outside and pump it on the ground and place pallets around it to hide it this is also a continual. [sic]."

[doc. # 12, pp. 2, 4, 10]. None of these conclusory allegations plausibly demonstrate that either defendant knew of yet disregarded a substantial risk of serious harm to Plaintiff.

     Plaintiff at best alleges that Warden Bass forced him to defecate in bags, which deprived him of dignity and decency. [doc. # 12, p. 4]. However, while Warden Bass allegedly knew Plaintiff was forced to use bags, Plaintiff does not allege that Bass knew that this practice alone[6] posed a substantial risk of serious harm to *Plaintiff*. *See Alexander v. Texas Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) ("While Alexander reported the cell conditions to officers on shift, he cannot make the requisite showing that they *in fact* 'drew the inference' that there was a substantial risk of serious harm."). Also of import, Plaintiff does not allege that Bass caused the lack of water at TPDC and the consequent inoperable facilities; rather, he alleges that every citizen in Tensas Parish lacked water. [doc. # 12, p. 2]. That Bass provided Plaintiff bags to use

---

[6] As above, Plaintiff does not specify if or how Bass was involved in any of the other related and unrelated conditions under which he was confined.

in this difficult yet temporary context does not demonstrate deliberate indifference; at best Plaintiff pleads potential negligence, suggesting that Bass should have implemented unidentified alternative means to address prisoners' needs when the water was off.

Moreover, Plaintiff does not describe a sufficiently serious deprivation. The Eighth Amendment does embody "broad and idealistic concepts of dignity, civilized standards, humanity and decency, against which conditions of confinement must be judged." *Rhodes v. Chapman*, 452 U.S. 337, 372 (1981) (internal quotation marks and quoted sources omitted). However, "the Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort." *Id.* at 349. Here, the intermittent, sporadic, and temporary instances of using a bag when the water was not working—"for hours and sometimes days at a time"—do not reflect an extreme deprivation of dignity.[7]

The undersigned is sympathetic to Plaintiff's alleged experiences, but Plaintiff does not plausibly allege wanton infliction of pain or the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference."[8] *See Davis v.*

---

[7] *See McCoy v. McLeod*, 3 F.3d 439 (5th Cir. 1993) (dismissing a claim that a prisoner was "briefly uncomfortable while being stripped searched on the days when the weather was cold" because the claim did "not approach the type of barbaric conditions of confinement which deprive a prisoner of identifiable human needs."); *Lee v. Burke*, 2007 WL 4608730, at *3 (W.D. La. Dec. 11, 2007), subsequently dismissed, 311 F. App'x 700 (5th Cir. 2009) ("Plaintiff also complains that he had to use the bathroom in a trash bag while he was in the SHU[,]" but "Plaintiff has not established that the living conditions were so serious as to deprive Plaintiff of the minimal measure of life's necessities . . . ."); *Burgos v. Cameron*, 2006 WL 3518647, at *2 (M.D. Fla. Dec. 6, 2006) (holding, where inmates "were provided with plastic bags to use instead of the toilets, which were collected by the officers[,]" that the conditions did not pose "a threat to either Plaintiffs' health or safety" and were not extreme).

[8] In fact, Plaintiff suggests that when the water returned to TPDC, Assistant Warden A. Johnson helped remove clogged toilets and removed excrement from the dormitory. [doc. # 12, p. 10]. This does not approach deliberate indifference.

8

*Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (observing that the Eighth Amendment prohibits the wanton infliction of pain). The Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Patrick L. Kingsley, Sr.'s claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 11th day of September, 2024.

_____
Kayla Dye McClusky
United States Magistrate Judge